UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| MICHAEL M.[1], | ) |
| | ) |
|      Plaintiff, | ) |
| | ) |
|   v. | )    CIVIL NO.  1:19cv212 |
| | ) |
| ANDREW SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

<u>OPINION AND ORDER</u>

This matter is before the court for judicial review of a final decision of the defendant
Commissioner of Social Security Administration denying Plaintiff's application for Disability
Insurance Benefits (DIB) as provided for in the Social Security Act. 42 U.S.C. § 423(a), §
1382c(a)(3).  Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the
[Commissioner] shall file a certified copy of the transcript of the record including the evidence
upon which the findings and decision complained of are based.  The court shall have the power
to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or
reversing the decision of the [Commissioner], with or without remanding the case for a
rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by
substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an
"inability to engage in any substantial gainful activity by reason of any medically determinable
physical or mental impairment which can be expected to last for a continuous period of not less
than 12 months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental

---

[1]  To protect privacy, Plaintiff's full name will not be used in this Order.

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

    1.    The claimant meets the insured status requirements of the Social Security Act

through September 30, 2021. (Exhibit 5D).

2.     The claimant has not engaged in substantial gainful activity since March 3, 2016, the alleged onset date (20 CFR 404.1571 *et seq*.).

3.     The claimant has the following severe impairments: osteoarthritis of bilateral knees, lumbar degenerative disc disease with a history of a lumbar laminectomy, and obesity (20 CFR 404.1520(c)).

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except with never climbing ladders, ropes, or scaffolds; the claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; the claimant can frequently handle and finger; the claimant must avoid unprotected heights; the claimant must have the option to sit or stand after 30 minutes.

6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.     The claimant was born on July 14, 1965 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from March 3, 2016, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 14 - 22).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed his opening brief on October 11, 2019. On November 21, 2019, the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on December 5, 2019. Upon full review of the record in this cause, this court is of the view that the ALJ's decision must be remanded.

A five-step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

In November 2014, Plaintiff underwent a left L4-L5, L5-S1 discectomy. (Tr. 305.) He returned for follow up on January 7, 2015. (*Id*.) He was having some residual back discomfort

largely controlled with two to three narcotics (Norco) a day; however, he also had intermittent leg numbness, although it was improved since surgery. (*Id*.) At that time, Plaintiff was putting in 10-hour days at work. (*Id*.) He was counseled on the potential for recurrent disc herniations and told to increase his medications if his leg pain progresses. (*Id*.)

On August 5, 2015, Plaintiff was seen at the Emergency Room for a possible peripheral ischemia; they detected a right lower extremity embolus, along with other abnormalities, and Plaintiff was admitted that day and underwent a right femoral artery exploration and embolectomy. (*See, e.g.*, Tr. 247-48, 261-63, 266.) Although he still required treatment after nearly one week of inpatient treatment, his providers adjusted his treatment so that he could be discharged in order to spend time with family members who were going overseas. (*Id*.) Plaintiff was discharged on August 12, 2015 with the following diagnoses: (1) acute right foot ischemia, status-post catheter-directed thrombolysis, (2) anticoagulation with Xarelto, (3) Heparin-induced thrombocytopenia, and (4) acute kidney injury, resolved, (5) transaminitis, resolved, (6) hyponatremia, resolved, (7) hypertension, and (8) mild rhabdomyolysis, resolved. (Tr. 247.) Plaintiff also had a noted history of depression with antidepressants. (Tr. 247, 261, 264.) Two weeks following his discharge, Plaintiff followed up with his providers from the ER at the hematology/oncology clinic, at which time he was counseled on the risks of recurring venous thromboembolism and treatment. (Tr. 294-96.)

On October 30, 2015, Plaintiff sought treatment at Pain Management for his back pain. (Tr. 297-302.) At this initial visit, Plaintiff complained of lower back pain with radiation, that had been slowly worsening over time, which was now constant. (Tr. 297.) Although he had had "excellent relief" from his radicular symptoms post lumbar laminectomy, he still had persistent

back pain and bilateral knee pain, secondary to osteoarthritis. (*Id*.) His Oswestry Disability Index score was 42, reflecting severe disability. (Tr. 298.) At that time, psychiatric review was positive for depression. (Tr. 299.) Musculoskeletal, knee, and buttock testing was abnormal. (Tr. 300.) Plaintiff was diagnosed with: (1) chronic knee pain, bilaterally, (2) osteoarthritis of both knees, (3) facet arthropathy, lumbar, (4) lumbago syndrome, and (5) lumbar degenerative disc disease. (Tr. 300-01.) Dr. Madupu prescribed medication, including Norco, and other treatment options and testing were recommended. (Tr. 301.)

Plaintiff underwent a lumber spine MRI on February 15, 2016. (Tr. 308-09.) This MRI demonstrated that the L4-L5 and L5-S1 discs were desiccated with a moderate circumferential bulge and posterocentral and left paracentral disc extrusion indenting the thecal sac and compressing the left L5 and S1 nerve roots. (Tr. 309.) There was moderate to severe narrowing of the left lateral recess and neural foramen abutting the exiting L4 and L5 nerve root. (*Id*.) There was mild to moderate narrowing of the right lateral recess and foramina, and mild leftsided canal narrowing at the L4-L5, and moderate narrowing at the L5-S1. (*Id*.) Follow-up was recommended. (*Id*.)

On February 25, 2016, Plaintiff sought treatment with Dr. Julius Silvidi at Goodman Campbell Brain & Spine for his low back pain and his medications were reviewed. (Tr. 306-07.) Plaintiff returned to Dr. Silvidi on April 6, 2016 (Tr. 312-14), complaining that while he had improvement in his left leg pain, it was incomplete relief. (Tr. 316.) Plaintiff returned to work, where he was involved in heavy physical labor, and his back and bilateral leg pain continued. (*Id*.) His pain was aggravated with bending and standing. (*Id*.) On exam, he had a restricted range of motion in his lumbar spine. (*Id*.) His gait was slow and guarded. (*Id*.) Dr. Silvidi diagnosed

chronic back and leg pain and L4-L5 and L5-S1 spondylosis status post discectomy. (Tr. 316.) Dr. Silvidi opined that Plaintiff required sedentary work. (*Id*.)

On March 3, 2016, Plaintiff returned to Pain Management for a follow-up appointment. (Tr. 329-35.) Despite the medication management treatment, his symptoms, pain, functioning, and interaction with others were all unchanged. (Tr. 330.) His Oswestry score was 68 (Tr. 330), indicating that his back pain impinges on all aspects of his life. His February 2016 MRI was reviewed, as were his bilateral positive straight leg raises. (*Id*.) Plaintiff also complained of depression. (Tr. 331.) Musculoskeletal, knee, and buttock testing were abnormal. (Tr. 332.) Plaintiff's previous diagnoses were affirmed (compare Tr. 333, with Tr. 300-01), and additional treatment was recommended, including increasing his narcotics, undergoing injections, and a rhizotomy (*i.e.*, severing the nerve roots in the spinal cord). (Tr. 333.)

On March 29, 2016, Plaintiff sought treatment at American Health Network for his many conditions. (Tr. 324-27.) Plaintiff complained of decreased activity, fatigue, generalized weakness, low back pain, and weight gain. (Tr. 326.) On exam, Plaintiff's appearance was found to be "ill appearing." (*Id*.) He has tenderness and moderately reduced range of motion in his lumbar spine. (Tr. 326.) His lumbar curvature was flat (*i.e.*, abnormal) and his thoracic curvature had kyphosis (*i.e.*, abnormal). (*Id*.) It appears that examination findings were positive for anxiety and depression, but it was not "unusual." (*Id.*) Plaintiff was diagnosed with (1) chronic bilateral low back pain with bilateral sciatica, (2) other chronic pain, (3) obstructive sleep apnea, (4) obesity, and (5) moderate episode of recurrent major depressive disorder, among others. (Tr. 326.) A treatment plan was implemented with both medications and referrals for treatment. (*Id.*)

Plaintiff returned to Pain Management on May 16, 2016, and his condition was

unchanged. (Tr. 337.) His Oswestry score was 50 (Tr. 337), indicating severe disability. After examination, many of his previous diagnoses were affirmed. (Compare Tr. 340, with Tr. 300-01.) His treatment plan was updated, given that Dr. Silvidi did not recommend surgery. (Tr. 340.) Plaintiff returned in August, and his Oswestry score (Tr. 353) still indicated severe disability. After exam, his previous diagnoses were affirmed. (Compare Tr. 356, with Tr. 300-01.) His treatment plan was updated with the goal of decreasing his pain and improving his functional mobility and activities. (Tr. 356.)

Plaintiff returned to American Health Network on August 15, 2016 for management of his uncontrolled type 2 diabetes, a new diagnosis. (Tr. 344-46.) Plaintiff returned to Pain Management on August 29, 2016. (Tr. 503-08.) His Oswestry score was 44 (Tr. 504), indicating severe disability. He reported that standing, walking, squatting, lifting, and daily activities exacerbated his pain. (Tr. 504.) After exam, his diagnoses were affirmed, his medications were adjusted, and he was counseled on his conditions. (Tr. 507-08.)

On October 20, 2016, Plaintiff returned to American Health Network. (Tr. 399- 403.) At this visit, he appeared "chronically ill." (Tr. 401.) He was anxious. (Tr. 402.) Of note, his major depressive disorder, recurrent, moderate, was chronic as was his bilateral low back pain with bilateral sciatica. (*Id.*) Medications were recommended. (Tr. 403.) Plaintiff returned on November 10, 2016 (Tr. 393-97), and similar examinations findings were noted. (Compare Tr. 395-96, with Tr. 401-02.) He also had abnormal findings on thoracic spine testing. (Tr. 396.) His diagnoses were affirmed, and his medications were adjusted. (Tr. 397.)

Plaintiff returned to Pain Management on January 9, 2017. (Tr. 475-80.) His Oswestry score was 52 (Tr. 476), indicating severe disability. He complained that the pain in his hands had

been getting worse lately and he was having a hard time gripping due to pain. (Tr. 476.) After exam, his condition was assessed as unchanged. (Tr. 479.) He was advised as to opioid treatment for his chronic pain and the associated regulations. (Tr. 486-92.)

On February 7, 2017, Plaintiff returned to American Health Network. (Tr. 387- 92.) He complained he was tired in the morning, fatigued, and not sleeping well. (Tr. 387-88.) He also complained of back pain joint pain, swelling, and muscle weakness. (Tr. 389.) Examination findings included (1) chronically ill-appearing, and (2) and anxiousness/hopelessness. (Tr. 390.) His diagnoses were affirmed, and a sleep study and medications were recommended. (Tr. 390-91.)

On February 28, 2017, Plaintiff underwent a polysomnography. (Tr. 361-62.) The study showed evidence of obstructive apnea and he was diagnosed with obstructive sleep apnea and periodic limb movement. (*Id*.) A CPAP (*i.e.*, Continuous Positive Airway Pressure) was recommended, along with other measures, including weight reduction. (*Id*.) Plaintiff returned to American Health Network on March 16, 2017 (Tr. 384-86) to set up his CPAP and was counseled on proper usage. (Tr. 385.)

Also, in March 2017, Plaintiff returned to Pain Management. (Tr. 445-50.) His Oswestry score was 52 (Tr. 446), indicating severe disability. He reported needing more pain medication lately due to increased pain. (Tr. 446.) After exam, his condition was assessed as unchanged. (Tr. 449.) A urine drug screen was not required, as he was not taking more than 15mg of morphine a day. (Tr. 450.)

On May 4, 2017, Plaintiff returned to American Health Network. (Tr. 379-83.) At that time, he complained of trouble with weight loss, and cramping in the legs with a feeling of

heaviness in them. (Tr. 379.) He also complained of gait disturbances, anxiety, joint pain, joint swelling, and muscle weakness. (Tr. 380.) On exam, he was chronically ill appearing. (Tr. 381.) His diagnoses were affirmed, and his medications were updated. (Tr. 383.)

On July 18, 2017, Plaintiff returned to Pain Management. (Tr. 413-19.) His Oswestry score was 50 (Tr. 414), indicating severe disability. He reported that his pain had been worse since he was out of his pain medications. (Tr. 414.) After exam, his condition was assessed as unchanged. (Tr. 418.) His current opioid medications were continued. (*Id.*)

Plaintiff returned to American Health Network on August 14, 2017. (Tr. 371-78.) He complained of depression, little interest or pleasure in doing things, and difficulty functioning, along with back and leg pain aggravated by movement, joint pain, limping, and weakness. (Tr. 371, 374.) On exam, he had mild left knee pain with motion testing. (Tr. 375.) He was noted to be overweight. (*Id.*) He demonstrated some mild wheezing on exam. (*Id.*) A treatment plan was implemented with referrals, medications, and other modalities, including a knee brace. (Tr. 378.) His major depressive disorder, recurrent, moderate was noted as chronic. (Tr. 371-72.)

On August 10, 2016, a State Agency psychological consultant opined that Plaintiff's anxiety disorder was not a severe impairment. (Tr. 55-56.) Around that same time, a State Agency medical consultant opined that Plaintiff had a spine disorder, but nevertheless could perform light work. (Tr. 55, 57-58.) These assessments were affirmed by other State Agency consultants. (Tr. 66-69.)

Plaintiff's wife completed a Third-Party Function Report on July 17, 2016. (Tr. 187-94.) Plaintiff's wife reported that Plaintiff's pain affects his sleep. (Tr. 188.) His ability to do house and yard work depends on the week. (Tr. 189.) He has to take breaks. (Tr. 191.) He can walk half

a block and then has to rest. (Tr. 192.) His hands cramp up. (*Id*.) He deals with stress and change only "fair." (Tr. 193.) He had to take early retirement because of his neck condition. (Tr. 194.)

Plaintiff completed a Function Report on July 20, 2016. (Tr. 196-204.) He reported that his pain wakes him up. (Tr. 197.) He reported that almost with any activity, he has to slow down and stop and take breaks. (Tr. 197-98.) He needs help and encouragement in order to do activities. (Tr. 198.) When he has leg pain, he will use a cane, but does not do that often. (Tr. 202.) He does not like change, but tries to deal with it; he handles stress "okay" most of the time. (*Id*.) He needs to take breaks. (Tr. 201.) He has trouble completing tasks. (*Id*.)

Plaintiff's hearing lasted 30 minutes. During this hearing, Plaintiff was noted to have to lean forward on his left elbow and arm for support when sitting in the chair because of the pain. (Tr. 44.)

Plaintiff testified that he was an iron worker. (Tr. 32.) He had been an iron worker for 31 years, and prior to that, he did a four-year apprenticeship as an iron worker. (Tr. 35.) After 35 years, however, the iron workers union put him on disability. (Tr. 33; *see also* Tr. 337 (Pain Management completed his disability paperwork)). He stopped working in December 2015 because he could not complete the job. (Tr. 32-33.) He only has a high school education. (Tr. 32.) He tried working at another job for 3-4 days in 2016, but simply could not do it. (Tr. 36.)

Plaintiff testified that he cannot work because he has trouble bending and walking and problems with his knees and hands. (Tr. 36, 38.) While the back surgery (circa November 2014) helped, he still had pain. (Tr. 37.) He was taking narcotics (*id*.), but "just can't get rid of the pain" (Tr. 38). Although another surgery was recommended, he would probably lose 25 to 35% of his mobility and would still have the same or worse pain. (Tr. 37-38.) The doctors have talked to him

about injections and about having his nerve endings burned, but he does not feel comfortable with that. (Tr. 42.) He uses a cane when he leaves the house. (Tr. 39.) He could stand 15-20 minutes in one place, but needs to lean against something to relieve the pain. (*Id*.) His wife will have to grab the items at the store. (Tr. 46.) He putters around the house and tries to mow the lawn with a riding mower one section at a time. (Tr. 39-40.) While he can sometimes lift a sulphur salt bag, there are days he cannot, and will not, lift or carry at all. (Tr. 40.)

When he goes to the store with his wife, he has to push the cart and he cannot stay very long. (Tr. 40-41.) He has trouble dressing. (Tr. 41.) He has trouble gripping and has no strength in his hands. (Tr. 43.) Sitting in a chair with his back straight up is painful and he cannot do that for long. (Tr. 44.) He has to stand for a bit after sitting. (*Id*.) He tries to stay active by trying to do some gardening or looking for mushrooms, and has to find different ways to do things because of his pain and the breaks he needs. (Tr. 44.) He takes a chair with him anytime he is outside. (Tr. 44- 45.) He does things at his leisure. (*Id*.) He cannot go to the festivals he and his wife used to go to because of the walking. (Tr. 46.) While he tries to go to the store with his wife when he can, there are bad days when he cannot go and that happens quite a bit. (*Id*.)

The ALJ asked the VE to assume a hypothetical individual similar to the ultimate RFC; the VE testified that the individual could perform the job of (1) Checker, Dictionary of Occupational Titles (DOT) No. 222.687-010, (2) Routing Clerk, DOT No. 22.687-022, and (3) Mail Sorter, DOT No. 209.687-026. (Tr. 49.) The VE testified that employers do not tolerate more than 15% off task behavior or more than 6-12 absences a year. (*Id*.)

The ALJ found that Plaintiff's (1) osteoarthritis of bilateral knees; (2) lumbar degenerative disc disease with a history of a lumbar laminectomy; and, (3) obesity were severe

impairments. (Tr. 14.) He concluded that those impairments neither met nor equaled a section in the Listing of Impairments. (Tr. 16.) The ALJ found that Plaintiff could perform "light work as defined in 20 CFR 404.1567(b)", except never climbing ladders, ropes, or scaffolds; the claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; the claimant can frequently handle and finger; the claimant must avoid unprotected heights; the claimant must have the option to sit or stand after 30 minutes. (Tr. 17.) The ALJ found that Plaintiff could not perform his past work, but could perform other jobs. (Tr. 20-21.)

In support of remand, Plaintiff first argues that the ALJ failed to account for his work history. Plaintiff points out that he has a solid work history and was an Iron Worker, a very heavy job, for roughly 35 years. Very heavy work involves "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more." 20 C.F.R. § 404.1567. This 35-year work history is important given Plaintiff's chronic conditions: (1) chronic bilateral low back pain with bilateral sciatica, (2) other chronic pain, (3) obstructive sleep apnea, (4) obesity, (5) chronic knee pain, bilaterally, (6) osteoarthritis of both knees, (7) facet arthropathy, lumbar, (8) lumbago syndrome, and (9) lumbar degenerative disc disease. (Tr. 305 (Dr. Silvidi's note that Plaintiff's work activity has the potential for recurrent disc herniation)).

Plaintiff argues that these conditions are reasonably the result of his work history. Plaintiff contends that this level of activity, over the course of 35 years, broke down Plaintiff's body. Plaintiff claims that 35 years of very arduous work, like the type Plaintiff performed here, would have automatically entitled him to disability benefits, as he would be per se unable to make a vocational adjustment to other work, if he had marginal education. 20 C.F.R. § 404.1562. This is

often referred to as the "Worn-Out Worker Rule." *Carter v. Colvin*, No. 4:12-cv-808-Y, 2014 WL 239104 at *4-5 (N.D. Tex. Jan. 22, 2014). Although Plaintiff does not meet the specific requirements for application of the Worn-Out Worker Rule (simply because he obtained a high school diploma in 1983), Plaintiff argues that it nevertheless is relevant in the consideration of and application of Plaintiff's claim at Step Two to determine whether he had other severe impairments, at Step Three to determine whether he may medically equal a Listing, in the RFC to determine the most he can perform, and in assessing his credibility. Despite its application at all the steps and overall consideration, it was never considered by the ALJ. This is critical because, in this case, Dr. Silvidi opined that Plaintiff could no longer perform his job and needed to pursue sedentary work. (Tr. 316.) This is consistent with Plaintiff's Pain Management providers, who completed Plaintiff's disability paperwork for the Iron Workers union. (Tr. 337.) Plaintiff notes that if Plaintiff were limited to sedentary work, then Plaintiff would have been found disabled, automatically, given medical Vocational Guidelines Rule 201.14. Despite its importance, the ALJ did not consider Plaintiff's 35-year work history. Thus, Plaintiff requests remand for a proper consideration of Plaintiff's 35-year work history as an Iron Worker.

Plaintiff also asserts that this error is critically compounded given the ALJ's failure to consider Plaintiff's 35-year work history and how it impacts his credibility. The Seventh Circuit has stated that "a claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." *Stark v. Colvin*, 813 F.3d 684, 689 (7th Cir. 2016); *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015); *see also Cole v. Colvin*, 831 F.3d 411, 415 (7th Cir. 2016) (same). Because of Plaintiff's solid work history and the correlation between his arduous work activity for 35 years and his disabling conditions, Plaintiff argues that the ALJ

should have considered Plaintiff's claim as a direct result of his work history. Plaintiff claims that the ALJ misunderstood Plaintiff's conditions and work history and how it related to Plaintiff's disability claim. *Flores v. Massanari*, 19 F. App'x 393, 404 (7th Cir. 2001) (criticizing ALJ for failing to acknowledge claimant's solid work history of 13 years).

In response, the Commissioner asserts that the ALJ did not need to mention Plaintiff's work history because work history is itself not dispositive in disability cases. However, this overlooks the issue. First, it is highly relevant evidence, and the ALJ is under an obligation to consider all the relevant evidence. *See* 20 C.F.R. § 404.1520(a)(3) ("We will consider all evidence in your case record when we make a determination or decision whether you are disabled."); SSR 16-3P (factors that must be considered include the onset of the symptoms and the activities that precipitate the symptoms). Second, even if it is not dispositive, *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016), it is critical evidence, relevant to Plaintiff's disability application, which the Seventh Circuit has held should be considered, *Stark v. Colvin*, 813 F.3d 684, 689 (7th Cir. 2016); *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015), *Cole v. Colvin*, 831 F.3d 411, 415 (7th Cir. 2016). In fact, contrary to the Commissioner's Response, the Agency itself states that the RFC assessment "must" be based on "[e]vidence from attempts to work." SSR 96-8p. Despite the precedent set by the Seventh Circuit and the Agency's own regulations, the ALJ did not factor Plaintiff's work history. Accordingly, remand is warranted on this issue.

Next, Plaintiff argues that the ALJ erred in considering his conditions at Step Two. Step Two is the first inquiry an ALJ makes of a claimant's conditions, 20 C.F.R. § 404.1520, and if the evidence is not properly considered, it will have effects throughout the remainder of the Decision. *See O'Connor-Spinner v. Colvin*, 832 F.3d 690, 698 (7th Cir. 2016) (erroneously eliminating

depression at Step Two resulted in a flawed ultimate decision). In fact, because of its critical nature, the Agency itself notes that "great care should be exercised" at Step Two. SSR 85-28, 1985 WL 56856 (Jan. 1, 1985). Plaintiff argues that the ALJ's Step Two analysis is critically flawed because the ALJ erred in (1) finding Plaintiff's major depressive disorder not severe, and (2) considering whether the combination of Plaintiff's non-severe and severe impairments warranted a finding that his non-severe impairments were severe.

Plaintiff claims that his major depressive disorder is a severe impairment. Despite constant medication, clinical mental diagnoses considered "chronic," "recurrent," and "moderate" (Tr. 326, 371-72), continued complaints of depression (Tr. 247, 261, 264, 299, 331), reports of a mood disorder (Tr. 361, 388), little interest or pleasure in doing things, handling stress and change only "fair" (Tr. 193), complaints of sleeping problems (Tr. 188, 197, 387-88), decreased activity and fatigue (Tr. 326, 374, 387-88), difficulty completing tasks (Tr. 201), needing help and reminders about medications (Tr. 189, 198), needing help and encouragement to get activities done (Tr. 198), having only one friend (aside from his wife) that he talks to every couple months (Tr. 200), abnormal clinical findings (Tr. 326, 381, 390, 401 (ill-appearing); Tr. 402 (anxious), Tr. 390 (anxiousness/hopelessness)), and his complaints of worrying more (Tr. 202), in addition to his chronic pain and other conditions, the ALJ concluded that Plaintiff's "major depressive disorder" was not severe because of some activities, the lack of "aberrant behaviors," and the State Agency consultant's opinions. (Tr. 15-16.)

Plaintiff argues that the ALJ's focus on activities was misplaced. Plaintiff's activities do not require him to maintain work-like attention nor do they involve any additional stress or change. *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013) (noting that a person's ability to

perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006)(reasoning that the pressures, the nature of work, flexibility in the use of time, and other aspects, often differ dramatically between home and office or factory or other place of paid work). Thus, the fact that Plaintiff can watch television, is generally independent in self-care, and can interact with others at home cannot serve as evidence that he does not suffer from some mental work-related limitations. Here, the ALJ's basis is only a selective review of activities in absolute terms, instead of degrees. Agency regulations require the ALJ to consider the degrees, not absolutes, of activities. *See* 20 C.F.R. § Pt. 404, Subpt. P., App. 1, § 12.00(F)(1) ("We will consider, for example, the kind, degree, and frequency of difficulty you would have"); *Id.* at § 12.00(F)(3)(d) (Agency will look to see how independently, appropriately, effectively, the activity is done and whether it is performed on a sustained basis). Thus, Plaintiff's ability to perform some activities on an infrequent basis would not be a reason to find his condition not severe in light of the evidence of his constant medication management, complaints of depression, mood disorder, sleeping problems, little interest or pleasure in doing things, decreased activity and fatigue, handling stress and change only "fair", difficulty completing tasks, needing help and reminders about his medications, needing help and encouragement to get activities done, having only one friend (aside from his wife) that he talks to every couple months, abnormal clinical findings, and his complaints of worrying more.

Independent of the ALJ's focus on Plaintiff's activities, Plaintiff demonstrated that his mental impairment warranted a severity finding. In fact, the Seventh Circuit has noted that the diagnosis itself may warrant a severity finding. In *O'Connor-Spinner*, the Seventh Circuit stated

that although the ALJ noted the "depressive disorder," the ALJ did not mention that the precise diagnosis was in fact "major depression, recurrent, severe" and that this would factor into the severity determination. 832 F.3d 690, 695-96. This case is akin to the Seventh Circuit's remand in *O'Connor-Spinner*. Here, the ALJ noted Plaintiff's major depressive disorder (Tr. 15), but failed to note that it was actually "recurrent", "moderate", and "chronic" (*see, e.g.*, Tr. 326, 371-72). This does not show a passing diagnosis, but rather a condition that would result in some work-related limitations if Plaintiff were required to complete a job 8 hours a day, 5 days a week on a regular work schedule. This shows that the ALJ erred in the severity finding as he failed to note "the importance of the specific diagnosis." *O'Connor-Spinner*, 832 F. 3d at 695-96. As noted in *O'Connor-Spinner*, the Step Two determination is a "de minimus screening" and "[r]ather than relying on the guidance of a professional and evidence from [the claimant's] treating sources, the ALJ 'played doctor' by substituting his opinion [that Plaintiff's mental impairment was not severe] for their medical judgment." *Id.* at 697. In this case, it is not simply Plaintiff's "recurrent," "moderate," and "chronic" major depressive disorder that the ALJ failed to consider, but rather, other conditions that would factor into the analysis: specifically, Plaintiff's obstructive sleep apnea and other troubles with sleep, and his obesity. *See* SSR 02-1p, 2002 WL 34686281, at *3 (Sept. 12, 2002) ("Obesity may also cause or contribute to mental impairments such as depression. The effects of obesity may be subtle, such as the loss of mental clarity and slowed reactions that may result from obesity-related sleep apnea."). Clearly, the ALJ erred in his analysis of Plaintiff's mental impairments.

Moreover, the ALJ states that Plaintiff's depression was not severe because Plaintiff did not receive formal mental health treatment. (Tr. 16.) However, this is not a valid basis for

rejecting the condition at Step Two. In any event, Plaintiff did receive mental health treatment. Specifically, he received constant prescription medication management via his primary care providers. (*See, e.g.*, Tr. 295, 298, 306, 312-13, 321, 325, 330, 337, 345, 354, 376, 383, 386, 392, 397, 403, 415, 447, 477, 504 (Cymbalta/Duloxetine), Tr. 306, 312-13 (Buspirone), Tr. 321, 346, 376, 383, 385, 391, 397, 403 (WellbutrinXl).) As the face of health care changes, depression is now one of the most common disorders treated in the primary care setting. *See* Ferguson, James M., Depression: Diagnosis and Management for the Primary Care Physician, PRIMARY CARE COMPANION TO THE JOURNAL OF CLINICAL PSYCHIATRY 2(5):173-78 (Oct. 2000), available at http://www.ncbi.nlm.nih.gov/pmc/articles/ PMC181135/. Contrary to the ALJ's Decision, Plaintiff need not have obtained mental health treatment from a psychiatrist in order to have a severe mental impairment. Accordingly, this cannot serve as a basis for rejecting Plaintiff's mental illness. This is critical because while there were normal clinical findings, there were abnormal findings as well. (Tr. 326, 381, 390, 401 (ill-appearing); Tr. 402 (anxious), Tr. 390 (anxiousness/hopelessness).) Thus, the ALJ erred in categorizing Plaintiff's depression as non-severe.

Additionally, the ALJ failed to consider Plaintiff's medication management when concluding that Plaintiff's depression was non-severe. This is important because the ALJ did not consider Plaintiff's heavy pain medication, including narcotics and opioids. *See* SSR 03-2p, 2003 WL 22399117, at *5 (Oct. 20, 2003) ("Chronic pain and many of the medications prescribed to treat it may affect an individual's ability to maintain attention and concentration, as well as adversely affect his or her cognition, mood, and behavior, and may even reduce motor reaction times. These factors can interfere with an individual's ability to sustain work activity over time or

preclude sustained work activity altogether."). Plaintiff's treatment management involved many pain medications, none of which can be objectively viewed as conservative.

For the foregoing reasons, this Court agrees with Plaintiff that the ALJ erred in concluding that Plaintiff's depression, on its own, was not a severe impairment. Clearly, the evidence noted above would affect Plaintiff's ability to understand, carry out, and remember instructions, use his judgment, respond appropriately to supervision, co-workers and usual work situations, and deal with changes in a routine work setting. 20 C.F.R. § 404.1522. Thus, remand is necessary for a proper consideration of Plaintiff's depression at Step Two and thereafter.

However, even if Plaintiff's depression was not a severe impairment on its own, Plaintiff's depression still would necessitate some restriction in the RFC. Agency regulations explain that mental conditions do not need to be found severe before they trigger the requirement that the limitations of such mental conditions be considered in the RFC. As explained in SSR 96-8p:

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim.

1996 WL 374184, at *5; *see also* 20 C.F.R. § 404.1520(a)(3) ("We will consider all evidence in your case record when we make a determination or decision whether you are disabled."); 20 C.F.R. § 404.1545(a)(2) (when assessing the RFC the non-severe conditions will be considered). However, as noted above, Plaintiff's "recurrent," "moderate," "chronic" depression was not accounted for in the RFC. *See Murphy v. Colvin*, 759 F.3d 811, 820 (7th Cir. 2014) ("An RFC determination must account for all impairments, even those that are not severe in isolation.");

*Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (same); *Arnett*, 676 F.3d at 592-94 (remanding because ALJ failed to properly assess claimant's RFC where, despite diagnosed vascular dementia, the ALJ did not refer to any work limitations that would accommodate dementia). The ALJ's RFC is devoid of any reasonable restrictions as to basic mental work activities. Thus, remand is necessary.

Additionally, the ALJ looked at Plaintiff's depression in isolation. The ALJ failed to note whether the condition might be severe in light of Plaintiff's other severe conditions (*i.e.*, osteoarthritis of bilateral knees, lumbar degenerative disc disease with a history of lumbar laminectomy, and obesity) or other non-severe impairments (obstructive sleep apnea). As explained in SSR 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985), even if an impairment may not be severe, the possibility of several such impairments combining to produce a severe impairment must be considered, and the adjudicator must consider the combination of those impairments. Further, 20 C.F.R. § 404.1522 provides that: "[i]f you have two or more concurrent impairments which, when considered in combination, are severe, we must also determine whether the combined effect of your impairments can be expected to continue to be severe for 12 months." In this case, the ALJ never considered whether Plaintiff's depression was severe in combination in light of his other severe impairments—osteoarthritis of bilateral knees, lumbar degenerative disc disease with a history of a lumbar laminectomy, and obesity. *See Berset v. Astrue*, No. 5:11-CV-194-BG ECF, 2012 WL 3578597 * 6 (N.D. Tex. July 30, 2012).

Therefore, the ALJ's analysis is critically flawed in that there was no consideration of whether and how Plaintiff's diagnosed depression may relate to his other severe impairments. *See Goins v. Colvin*, 764 F.3d 677, 681 (7th Cir. 2014) ("We keep telling the Social Security

Administration's administrative law judges that they have to consider an applicant's medical problems in combination."). This is particularly noteworthy given the interplay of Plaintiff's conditions. Thus, to conclude that Plaintiff's limited mobility is not somehow connected to Plaintiff's mental functioning is a finding not supported by the facts (given Plaintiff's conditions) or the law in this Circuit. *See* SSR 96-8p, 1996 WL 374184, at *6 ("even though mental impairments usually affect nonexertional functions, they may also limit exertional capacity by affecting one or more of the seven strength demands. For example, a mental impairment may cause fatigue"); *see also* 20 C.F.R. § 404.1520a(c) ("Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment."). The same is true with regards to Plaintiff's other conditions noted above. Additionally, Plaintiff complained of fatigue (Tr. 326, 387-88), which may be a result of mental impairments as well. *See* SSR 96-8p. Thus, remand is necessary to properly address Plaintiff's conditions at Step Two, both individually and in combination.

The above errors are not simply limited to Step Two. Rather, the above errors infected the remainder of the Decision. Because the ALJ failed to properly consider the evidence at Step Two, the Step Three determination, which is built on the Step Two finding, and the RFC, which flows from Steps Two and Three, is equally flawed. *See Ridinger v. Astrue*, 589 F. Supp. 2d 995, 1005 (N.D. Ill. 2008) ("Because the scope and severity of the impairments evaluated at Step Two can

impact the ALJ's equivalence determination at Step Three and his [RFC] determination at Step Four, remand is warranted where the ALJ fails to consider the entirety of the evidence at Step Two."); *Daugherty v. Berryhill*, No. 1:18cv256, 2019 WL 2083033, at *13 (N.D. Ind. May 13, 2019) (an erroneous analysis at an earlier step infects the later). In this case, the ALJ's Decision in no way fully accounts for the evidence and the limitations stemming from Plaintiff's depression, or the combination of all his conditions and thereafter in the Decision..

In response, the Commissioner merely asserts that remand is not necessary for the ALJ's Step Two errors because the ALJ proceeded with the sequential evaluation. However, it is clear that an erroneous analysis at Step Two, like in this case, infects the entire Decision. *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 698 (7th Cir. 2016); *Ridinger v. Astrue*, 589 F. Supp. 2d 995, 1005 (N.D. Ill. 2008); *Daugherty v. Berryhill*, No. 1:18cv256, 2019 WL 2083033, at *13 (N.D. Ind. May 13, 2019).) The ALJ's erroneous Step Two analysis regarding Plaintiff's depression resulted in a flawed Step Three, and RFC. Thus, the mere fact that the ALJ proceeded with the remaining steps does not salvage the ALJ's errors at Step Two.

For the foregoing reasons, this court finds that the ALJ erred in concluding that Plaintiff's depression, individually, was not a severe impairment. The evidence noted above would clearly affect Plaintiff's ability to understand, carry out, and remember instructions, use judgment, respond appropriately to supervision, co-workers and usual work situations, and deal with changes in a routine work setting. 20 C.F.R. § 404.1522. Thus, remand is necessary for a proper consideration of Plaintiff's depression at Step Two and thereafter.

Next, Plaintiff argues that the ALJ's RFC analysis is unsupported for several reasons. Plaintiff claims that the ALJ's RFC fails to substantially set forth what Plaintiff is capable of

performing. The Agency requires a function-by-function analysis. *See* SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996) ("The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in [20 C.F.R. § 404.1545(b)-(d)]. Only after that may an RFC be expressed in terms of the exertional levels of work, sedentary, light . . ."). Here, the ALJ did not "first identify the individual's functional limitations or restrictions and assess his work-related abilities on a function-by-function basis." Rather, the ALJ merely concluded Plaintiff could perform "light work." Thus, the ALJ did not provide a function-by-function RFC as required by the Agency.

Additionally, the description of "light work as defined in 20 C.F.R. § 404.1567(b)" does not constitute an RFC pursuant to Agency requirements. *See* SSR 96-8p, 1996 WL 374184 at *1 (RFC is "the most" Plaintiff can do). 20 C.F.R. § 404.1567(a) defines light as:

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds… a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

*Id.* "A good deal of walking or standing" is not a specific finding to ascertain the most Plaintiff can do. Neither does sitting most of the time. The ALJ's omission is critical given the facts in this case and Plaintiff's well-documented conditions. *Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004)("A great many people who are not grossly obese and do not have arthritic knees find it distinctly uncomfortable to stand for two hours at a time. To suppose that [claimant] could do so day after day on a factory floor borders on the fantastic, but in any event has no evidentiary basis that we can find."). For example, the record shows that Plaintiff reported that he can only walk

about a block or so before needing to rest for 10 to 30 minutes. (Tr. 192, 201.) Plaintiff reported that standing, walking, squatting, lifting, and daily activities exacerbated his pain. (Tr. 316, 504.) He reported that he could stand only 15-20 minutes in one place and needs to lean against something to relieve the pain. (Tr. 39.) He reported that sitting in a chair with his back straight up is painful and he cannot do that for long. (Tr. 44.) He reported that he has to stand for a bit after sitting and has to take a chair with him anytime he is outside. (Tr. 44-45.) He reported that because of his pain, he has to do things a different way. *(Id*.) This is all bolstered by Plaintiff's cane use. (Tr. 39, 202; *see also* Tr. 380 (complaining of gait disturbances); Tr. 316 (slow and guarded gait), Tr. 39 (he could stand 15-20 minutes in one place but needs to lean against something to relieve the pain).) The ALJ's assessment of "light work" does not fully provide for the facts in this case.

The ALJ's conclusion that Plaintiff "must have the option to sit or stand after 30 minutes" (Tr. 17) does not salvage the Decision. As Plaintiff notes, the ALJ failed to build a logical and accurate bridge in this regard. This case is akin to *Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017). In *Lanigan*, the ALJ assigned a limitation that the plaintiff would "be off task up to 10% of the work day, in addition to regularly scheduled breaks." *Id*. However, the Seventh Circuit found that the ALJ's limitation was not based on an accurate and logical bridge in light of the evidence of record. Like *Lanigan*, this case must be remanded as there is no logical bridge between this conclusion and the ALJ's 30-minute distinction. In fact, the evidence shows that Plaintiff would need a break well before the 30 minutes. (*See, e.g.*, Tr. 192, 201 (can only walk about a block before needing to stop and rest), Tr. 39 (can only stand 15-20 minutes in one place and needs to lean against something to relieve the pain)). Thus, there is no accurate and logical

bridge with the ALJ's RFC that Plaintiff "must have the option to sit or stand after 30 minutes." (Tr. 17).

Additionally, a sit-stand option, like the one provided by the ALJ here, constitutes a "reasonable accommodation" by the United States Equal Employment Opportunity Commission (EEOC) standards because it is a modification to the job as it is described. *See* U.S. Equal Empl. Opportunity Comm'n, EEOC Enforcement Guidance Notice No. 915.002, *Enforcement Guidance: Reasonable Accommodations and Undue Hardship Under the Americans with Disabilities Act* (2002), available at https://www.eeoc.gov/policy/docs/accommodation.html. The EEOC provided an example of a reasonable accommodation, similar to the situation present here:

> A cashier easily becomes fatigued because of lupus and, as a result, has difficulty making it through her shift. The employee requests a stool because sitting greatly reduces the fatigue. This accommodation is reasonable because it is a common-sense solution to remove a workplace barrier being required to stand when the job can be effectively performed sitting down. This 'reasonable' accommodation is effective because it addresses the employee's fatigue and enables her to perform her job.

(*Id*. at Example B.) Thus, according to the EEOC, the RFC's inclusion of such a significant sit-stand option constitutes a reasonable accommodation under the ADA and, as a result, any job that requires such accommodation for sitting and standing cannot be used to deny the claimant benefits. *See* SSR 00-1c, 2000 WL 5889 (Jan. 7, 2000) ("[W]hen the SSA [Social Security Administration] determines whether an individual is disabled for SSDI purposes, it does not take the possibility of 'reasonable accommodation' into account … [A]n ADA suit claiming that the [claimant] can perform her job with reasonable accommodation may well prove consistent with an SSDI claim that the [claimant] could not perform her own job (or other jobs) without it."); *Sullivan v. Halter*, 135 F. Supp. 2d 985, 987-88 (S.D. Iowa 2001) ("Whether or how an employer

might be willing, or required, to alter job duties to suit the limitations of a specific individual is not relevant because Social Security's assessment must be based on broad vocational patterns rather than on any individual employer's practices."). This is evident in the VE's testimony that such an accommodation is not allowed to all employees given that it reduced the job numbers by 50%. (Tr. 49.) Thus, this constitutes an accommodation and cannot be used as a basis to deny Plaintiff's application for disability benefits. None of this was ever addressed in the Decision.

The ALJ's light RFC is even more problematic given Plaintiff's cane use. (Tr. 39, 202; see also Tr. 380 (complaining of gait disturbances), Tr. 316 (slow and guarded gait), Tr. 39 (he could stand 15-20 minutes in one place but needs to lean against something to relieve the pain)). Plaintiff's use of a cane, in combination with his other conditions, triggers the necessity of analyzing whether Plaintiff's cane use needed to be included in the RFC. *See Grube v. Colvin*, No. 1:14-cv-01294-DKLRLY, 2015 WL 5672645, at *6 (S.D. Ind. Sept. 24, 2015) (even intermittent cane use is required in the RFC); *Daugherty v. Berryhill*, No. 1:18-cv-256, 2019 WL 2083033, at *14 (N.D. May 13, 2019) (same); *Cannon v. Berryhill*, No. 1:18-cv-203, 2019 WL 1011872, at *11 (N.D. Ind. Mar. 4, 2019) (same); *Miller v. Comm'r of Soc. Sec.*, No. 1:16-cv-122-SLC, 2018 WL 2316180, at *4 (N.D. Ind. May 22, 2018) (same). The ALJ, however, never discussed Plaintiff's use of the cane, which would have been more than reasonable given his underlying conditions and symptoms. This entirely undermines the ALJ's assessment of light work. *See Thomas v. Colvin*, 534 F. App'x 546, 550 (7th Cir. 2013) ("Thomas could not perform any light work jobs if she needed to use a cane."); *Leavitt v. Colvin*, No. 1:12-cv-1427-DKL-JMS, 2014 WL 852568 at *3 (S.D. Ind. Mar. 4, 2014) ("if [the claimant] used a cane, then the light-level jobs … would be eliminated."); *Lunceford v. Berryhill*, 3:16CV59-PPS, 2017 WL

2570284 at * 2 (N.D. Ind. June 14, 2017) (same); *Nash v. Astrue*, No. 10-C-353, 2011 WL 197591 at *9 (E.D. Wis. Jan. 20, 2011) (same). This is important because if Plaintiff were limited to, at most, sedentary work, he would have been found disabled via Medical Vocational Guidelines 201.14.

The ALJ's "light" RFC also fails because the ALJ did not assign any manipulative or reaching restrictions. *See* SSR 83-10, 1983 WL 31251 (Jan. 1, 1983) (light jobs "require use of arms and hands to grasp and to hold and turn objects"); SSR 85-15, 1985 WL 56857 (Jan. 1, 1985) ("Significant limitations of reaching or handling, therefore, may eliminate a large number of occupations a person could otherwise do."). This is important considering Plaintiff's trouble using his hands (*see, e.g.*, Tr. 36, 43, 192, 476), reasonably stemming from his conditions.

Likewise, here, there is simply no discussion of the number of breaks Plaintiff may require due to his conditions, in addition to the customary breaks. (*See, e.g.*, Tr. 191, 201 (he has to take breaks), Tr. 197-98 (almost with any activity, he has to go slow and stop and take breaks)); *Sikorski v. Berryhill*, 690 F. App'x 429, 432-33 (7th Cir. 2017) (ALJ did not adequately resolve off task behavior due to Plaintiff's Crohn's disease.) In the present case, the RFC entirely fails to address what impact Plaintiff's conditions would have on the customary tolerance for off task behavior.

In response, the Commissioner does not contest that the ALJ failed to provide a function-by-function analysis or that he failed to properly define the most Plaintiff can do. Rather, the Commissioner's Response focuses on the fact that the RFC is the responsibility of the ALJ. While this is generally true, the ALJ's RFC is not supported merely because the ALJ set forth an RFC. The ALJ must create an accurate and logical bridge between the evidence and this conclusion.

*Giebudowski v. Colvin*, 981 F.Supp.2d 765, 779 (N.D. Ill. Nov. 6, 2013); *Newell v. Astrue*, 869 F.Supp.2d 875, 883 (N.D. Ill. Apr. 23, 2012). But, in this case, the ALJ did not.

Plaintiff has shown that the ALJ failed to build an accurate and logical bridge in concluding that Plaintiff must have the option to sit or stand after 30 minutes. And, that even if the ALJ did, the VE's testimony is evidence that such an accommodation is not provided to all employees but only to 50%. The Commissioner attempts to dismiss this testimony by saying that the VE did not label the sit-stand option as an accommodation. However, the VE's testimony shows that the sit-stand option was not provided to all employees, but only to some. The mere fact that the VE identified it as something available only to some employees warrants consideration by the ALJ. However, the ALJ did not consider that fact.

The Commissioner asserts that the ALJ did not need to incorporate Plaintiff's occasional use of a cane in the RFC. The Commissioner cites no legal support for his position. In fact, the Commissioner's position is entirely inconsistent with Agency regulations and applicable precedent. Simply put, cane use need not be daily in order to require its inclusion in the RFC.

The Commissioner also asserts that manipulative and reaching restrictions were unnecessary because they stem from Plaintiff's subjective complaints of pain. However, the Agency recognizes that lay evidence, recorded observations, and effects of symptoms, including pain, "must be" incorporated into the RFC. SSR 96-8p.

Similarly, the RFC is silent on the impact Plaintiff's conditions would have on the customary tolerance for off task behavior. The Commissioner never addresses this in his Response. Accordingly, this court finds that the ALJ's RFC is unsupported and remand is required.

Plaintiff also argues that the ALJ erred in rejecting Dr. Silvidi's opinion. Dr. Silvidi, Plaintiff's treating physician at Goodman Campbell Brain & Spine, rendered an opinion that would have warranted a disability finding. (Tr. 316.) The ALJ, however, found that Dr. Silvidi's opinion was not entitled to deference because of "the claimant's own admission that he could lift up to forty pounds." (Tr. 20.) This cannot serve as a good reason under Agency regulations for rejecting Dr. Silvidi's treating source opinion.

The opinion of a treating source is entitled to controlling weight if it is (1) supported by medically-acceptable clinical and laboratory diagnostic techniques, and (2) not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527; SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004). The Seventh Circuit has held that the opinion of a source that has examined the claimant will be given more weight than an opinion of a source that has not examined the claimant, and an ALJ cannot reject the opinion of an examining physician solely because of a contradictory opinion of a non-examining physician. *See Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)*; see also Moore v. Barnhart*, 278 F.3d 920, 924 (9th Cir. 2002). Agency regulations provide: "[w]hen we do not give the treating source's opinion controlling weight, we apply the factors … and will always give good reasons in our notice of determination or decision for the weight we give [the] treating source's opinion." *See* 20 C.F.R. § 404.1527(c)(2). Specifically, the ALJ must provide good reasons for rejecting a treating source opinion given: (1) the examining relationship; (2) the treatment relationship, including the (i) length of the treatment relationship and frequency of examination, and (ii) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) any other relevant factors. *See* 20 C.F.R. §

404.1527(c)(1)-(6). Failure to comply with this "treating physician rule" constitutes legal error and ordinarily requires remand to the ALJ for proper consideration of the opinions. *Scott*, 647 F.3d at 739 (citing *Martinez v. Astrue*, 630 F.3d 693 (7th Cir. 2011); *Campbell v. Astrue*, 627 F.3d 299 (7th Cir. 2010)).

Plaintiff argues that the ALJ's focus on a 40-pound lifting "admission"—the only basis the ALJ used to reject Dr. Silvidi's opinion—is entirely misplaced. Although Plaintiff testified that while he can sometimes lift a 40-pound bag of sulphur salt, there are days he cannot, and will not, lift or carry at all. (Tr. 40.) Thus, Plaintiff argues, this "admission" is not inconsistent with his abilities given that Plaintiff cannot do this regularly. Plaintiff points out that the simple fact that Plaintiff testified he could, possibly, on one day, once, lift a 40-pound bag is not enough to completely disregard Dr. Silvidi's opinion as to what Plaintiff could do on a regular and continuing basis, 8 hours a day, 5 days a week. *See* SSR 96-8p ("RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.") Plaintiff concludes that there is no evidence that Plaintiff's ability to lift a 40-pound sulphur salt bag, likely once a month, is sustained activity to warrant disregarding Dr. Silvidi's opinion that sedentary work is required. Plaintiff notes that the lifting restriction would not be the only critical distinction in this case. Rather, the amount of standing and walking is a critical inquiry in this case. Thus, the one reason the ALJ identified cannot serve as "good reasons" recognized under Agency regulations for rejecting Dr. Silvidi's opinion.

Moreover, the ALJ applied virtually none of the factors required under 20 C.F.R. §

404.1527(c)(1)-(6), which weigh in favor of Dr. Silvidi's opinions. *Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018) ("even if there were sound reasons for refusing to give Dr. Callaghan's opinions controlling weight, the ALJ still erred by assigning his opinions little weight without considering relevant regulatory factors under 20 C.F.R. § 404.1527(c).") For example, Dr. Silvidi is an examining physician. 20 C.F.R. § 404.1527(c)(1) ("Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."). Further, Dr. Silvidi treated Plaintiff over time and was involved in his surgery and recovery, which provided him with a longitudinal view of Plaintiff's conditions. 20 C.F.R. § 404.1527(c)(2) ("Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective"). Specifically, Dr. Silvidi saw Plaintiff on at least two occasions, although the nature of these visits suggest that Dr. Silvidi saw him on more occasions, before rendering his opinion. *See* 20 C.F.R. § 404.1527(c)(2)-(i) ("Length of the treatment relationship and the frequency of examination. Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion"). Indeed, it appears that Plaintiff had an "ongoing treatment relationship" with Dr. Silvidi, which gave him a firm understanding of Plaintiff's condition and established an ongoing treatment relationship given the frequency of examination. 20 C.F.R. §§ 404.1527(c)(1), (2), (2)(i), (2)(ii); *see also Cirelli v. Astrue*, 751 F. Supp. 2d 991, 1006 (N.D. Ill. 2010) ("A claimant has an 'ongoing treatment relationship' with an acceptable medical source when the claimant has seen the medical source 'with a frequency consistent with

accepted medical practice for the type of treatment and/or evaluation required' for the claimant's medical condition. This may be 'only a few times or only after long intervals (e.g., twice a year)' if the nature and frequency of the treatment is typical for the claimant's condition.") (citations omitted); *Brown v. Barnhart*, 298 F. Supp. 2d 773, 790 (E.D. Wis. 2004) (same).

Additionally, Dr. Silvidi's opinion is consistent with the evidence contained in his own reports and records. These opinions are supported by Plaintiff's constant medication management and the weight of the medical evidence. 20 C.F.R. § 404.1527(c)(3). In particular, Dr. Silvidi's opinion is also supported by Plaintiff's testimony, Plaintiff's reports, and multiple other objective findings already addressed herein. Finally, Dr. Silvidi is a specialist, and thus his opinion should have been given more weight. 20 C.F.R. § 404.1527(c)(5). These factors are required by the Agency to be applied by the ALJ, and the ALJ's failure to do so constitutes reversible error.

As Plaintiff points out, if Dr. Silvidi's opinions were accorded controlling weight, Plaintiff would have been found disabled. However, even assuming, arguendo, that Dr. Silvidi's opinion was not entitled to controlling weight, the ALJ's Decision would nevertheless still necessitate remand given the ALJ's failure to provide "good reasons" pursuant to 20 C.F.R. § 404.1527. Remand, therefore, is necessary for the ALJ to properly consider Dr. Silvidi's opinions, and in turn, the true severity of Plaintiff's conditions.

The Commissioner seeks to salvage the ALJ's assessment of Dr. Silvidi's opinion claiming that Dr. Silvidi's opinion was not a medical opinion at all. This, however, is not what the ALJ found. (Tr. 20.) The Commissioner's position is contrary to *Chenery* and, thus, cannot serve as a defense. Moreover, the mere fact that it was such a "simple assertion" would not be a reason to dismiss the opinion. 20 C.F.R. § 404.1520b specifically authorizes the ALJ to re-contact

a medical source to ascertain the basis for the opinion Thus, without seeking clarification from Dr. Silvidi pursuant to 20 C.F.R. § 404.1520b(b), the Commissioner cannot now assert it as a basis to reject the opinion.

Clearly, the only reason the ALJ rejected Dr. Silvidi's opinion was Plaintiff's 40-pound lifting admission. The Commissioner asserts that the ALJ also relied on the evidence of record as a whole but, like the ALJ, failed to cite anything to support the assessment. The ALJ must provide "specific reasons" to reject the opinion. *Frobes v. Barnhart*, 467 F.Supp.2d 808, 819 (N.D. Ill. Nov. 20, 2006). Thus, citing generically to the record is not a specific reason.

However, even if the record as a whole would be sufficient, the ALJ still did not apply the required factors under 20 C.F.R. § 404.1527(c)(1)-(6) all of which weigh in favor of Dr. Silvidi's opinion. Specifically, Dr. Silvidi's examination relationship, treatment relationship, length of the treatment relationship and the frequency of examination, medical findings, and specialization, and Plaintiff's and third-party reports and other medical evidence. The Agency requires that the ALJ apply these factors, and the ALJ's failure to do so constitutes reversible error. For the foregoing reasons, remand is necessary for a proper evaluation of Dr. Silvidi's opinion.

Plaintiff next argues that the ALJ erred in assessing Plaintiff's credibility. The ALJ's credibility analysis appears to be based solely on the objective medical evidence and selected conclusions about Plaintiff's activities. (Tr. 18-20). Plaintiff argues that the ALJ's focus on normal objective medical evidence is misplaced. While the ALJ reviewed some of the medical evidence, the objective findings cannot serve as a basis for dismissing Plaintiff's statements. As noted earlier, the ALJ fundamentally misunderstood Plaintiff's conditions such that this error further manifested itself in a flawed credibility determination. Thus, even the limited evidence

that the ALJ did consider cannot serve as substantial evidence for the credibility determination. Also, the ALJ's use of selective objective evidence to suggest that Plaintiff's symptoms are uncorroborated, is itself unsupported. *See Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015) (ALJ erroneously believed that "complaints of pain, to be credible, must be confirmed by diagnostic tests."). Here, the ALJ failed to properly analyze and discuss the abnormal findings from exams as detailed herein, all of which support Plaintiff's statements; thus, highlighting only normal findings cannot serve as substantial evidence. Additionally, pain, and many of Plaintiff's conditions, cannot be measured strictly by objective testing. *See Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) ("Pain is always subjective."). The ALJ did not address any of the other evidence corroborating Plaintiff's symptoms as previously identified herein. Thus, the medical evidence the ALJ reviewed is not a proper basis for discrediting the Plaintiff.

The ALJ claims that Plaintiff is able to perform activities of daily living. (Tr. 18.) However, the ALJ discusses all of the activities in absolutes and not in degrees. *See Roddy*, 705 F.3d at 639 (noting that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time); *Mendez*, 439 F.3d at 362 (home and work are not the same thing). An ALJ cannot simply select evidence favoring her conclusion, but must "confront evidence that does not support [her] conclusion and explain why it was rejected." *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2002); *Cullina*n, 878F.3d at 605 ("In citing these questionable examples of a 'very active' lifestyle to discredit Cullinan's account of how she is limited by her impairments, the ALJ did not rely on substantial evidence."). This is critical given the number of breaks Plaintiff requires during the activities. (*See, e.g.*, Tr. 191, 201 (he has to take breaks), Tr. 197-98 (almost with any

activity, he has to go slow and stop and take breaks)).

Plaintiff argues that the ALJ's credibility analysis is also flawed given the factors the ALJ did not consider. For example, the ALJ did not consider Plaintiff's aggressive treatment of multiple narcotics and opioids. *See, e.g., Fowler v. Colvin*, No. 1:13-cv-01092, 2014 WL 4840582, at *8 (S.D. Ind. Sept. 29, 2014) ("The Court questions whether treatment with high doses of narcotics such as OxyContin and methadone can be considered 'conservative' treatment."); *Solleveld v. Colvin*, No. 12 CV 10193, 2014 WL 4100138, at *6 (N.D. Ill. Aug. 20, 2014) ("Although in some cases conservative treatment may contradict the severity of the limitations alleged, here the record shows that Solleveld was prescribed narcotics, including Vicodin and Norco, numerous times over her treatment history). *See Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013) (contrasting 'conservative' treatment like over-the-counter medication with 'more aggressive' treatment like prescription narcotics and steroid injections)."); *see also Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) (finding it improbable that the claimant would have undergone the pain-treatment procedures that she did, including heavy doses of strong drugs such as Vicodin, "merely in order to strengthen the credibility of her complaints of pain and so increase her chances of obtaining disability benefits"). Plaintiff notes that, short of surgery (which Dr. Silvidi opined Plaintiff was not a candidate for) it is hard to see what other treatment remained for Plaintiff to seek. (Tr. 340.)

Likewise, Plaintiff points out that the ALJ did not consider Plaintiff's extensive work history. As the Seventh Circuit has recognized, works history is a factor which may weigh in favor of a positive credibility finding

This court finds that, given that the ALJ did not provide any valid basis for discrediting

Plaintiff's allegations, the ALJ's rejection of Plaintiff's statements constitutes reversible error. *See Zurawski v. Halter*, 245 F.3d 881, 887-88 (7th Cir. 2001) (adverse credibility determination based on unsupported "inconsistencies" could not be upheld). The ALJ's credibility determination is patently wrong given the focus on selective objective evidence, the ALJ's misguided assessment of Plaintiff's daily activities, the ALJ's failure to consider Plaintiff's aggressive treatment with multiple narcotics and opioids, and the ALJ's failure to consider Plaintiff's extensive work history.

In response, the Commissioner generally asserts that the ALJ is in the best position to determine the witness's truthfulness. While generally this is true, the ALJ here based his determination on objective factors, which were unsupported. When a credibility finding rests on "objective factors or fundamental implausibilities," rather than on a claimant's demeanor or other subjective factors, a reviewing court has greater leeway to evaluate the ALJ's determination. *Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013); SSR 96-7p, 1996 WL 374186 (July 2, 1996) and SSR 16-3p 2017 WL 5180304 (Oct. 25, 2007) (explaining process by which ALJs must evaluate credibility of applicants).

Moreover, it is important to note that the Commissioner's reliance on the ALJ's consideration of the objective and daily activities factors is misplaced. The issue is not whether the wrong factors were considered by the ALJ, but rather, the ALJ's application of the factors. Thus, the Commissioner's response is unavailing, as he does not address how the ALJ erred in applying the factors. In this case, the ALJ misapplied the facts and the applicable law when considering the factors. Thus, the ALJ's rejection of Plaintiff's statements constitutes reversible error. *See Zurawski v. Halter*, 245 F.3d 881, 887-88 (7th Cir. 2001) (adverse credibility

determination based on unsupported "inconsistencies" could not be upheld). Remand is necessary on this issue to address the ALJ's errors.

Next, Plaintiff argues that the ALJ erred in rejecting Plaintiff's wife's statements. The ALJ is "obliged" to examine and weigh all the evidence, including third-party reports. *Herron v. Shalala*, 19 F.3d 329, 334 (7th Cir. 1994). These opinions are important and necessitate proper consideration. In this case, the ALJ rejected Plaintiff's wife's statement, claiming that she was "not a medical professional and cannot be considered a disinterested third party." (Tr. 20.) This cannot serve a proper basis for rejecting Plaintiff's wife's statements. *Behymer v. Apfel*, 45 F. Supp. 2d 654, 663 (N.D. Ind. 1999) ("A disregard for [family statements] violates the Commissioner's regulations about observations by nonmedical sources as to how an impairment affects a claimant's ability to work …When an ALJ fails to believe lay testimony about a claimant's allegations of pain or other symptoms, he should discuss the testimony specifically and make explicit credibility determinations.") (citations omitted.)

Third parties do not have to be medical professionals in order to submit statements in support. *See Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996) ("testimony from lay witnesses who see the claimant every day is of particular value[;] such lay witnesses will often be family members.") (citation omitted); *Morgan v. Barnhart*, 142 F. App'x 716, 731 (4th Cir. 2005) ("[I]f family members' evidence was automatically worthless, it would be an odd exercise in futility to even allow them to fill out questionnaires and submit them into evidence."). Even the Agency recognizes the importance of statements from family members. 20 C.F.R. § 404.1545(a)(3) (permitting claimant to submit "descriptions and observations" about her functional limitations from "family, neighbors, friends, or other persons"); SSR 16-3p (non-medical sources such as

family and friends may provide helpful important in order to assess the claimant's intensity, persistence, and limiting effects of symptoms and must be considered properly). Thus, the ALJ cannot simply disregard Plaintiff's wife's statements because she is not a medical professional. *See Teschner v. Colvin*, No. 15 C 6634, 2016 WL 7104280, at *9 (N.D. Ill. Dec. 6, 2016) (regulations permit testimony from family members without requiring them to have medical training); *see also Collins v. Berryhill*, No. 17 C 3589, 2018 WL 3361847, at *4 (N.D. Ill. July 10, 2018) (same).

The ALJ's second stated basis—"she cannot be considered a disinterested third party— fails for the same and similar reasons. *Eveland v. Berryhill*, No. 2:16-cv-203-PRC, 2017 WL 3600387, at *10 (N.D. Ind. Aug. 22, 2017). The mere fact that the statement comes from Plaintiff's wife is not a sufficient reason to reject her statements. *See Smolen v. Chater*, 80 F.3d at 1289 ("[t]he fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony.") (citation omitted); *see also Regennitter v. Comm'r of Social Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir. 1999) (same); *Johnson v. Astrue*, No. EDCV 07-01694-MLG, 2008 WL 4553141, at *6 (C.D. Cal. Oct. 9, 2008) ("the Ninth Circuit has consistently held that bias cannot be presumed from a familial relationship"). The Seventh Circuit has cautioned against reducing the weight of familial third-party reports merely because the possibility for bias exists. *See, e.g., Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013) ("The administrative law judge should have made clear whether he believed the fiancée's testimony or not, or which part he believed, or whether he had no idea how much of what she said was worthy of belief."); *see also Thompson v. Berryhill*, 722 F. App'x 582 (7th Cir. 2018) (the ALJ's analysis of daily activities is incomplete as the ALJ never considered what qualifications the record demonstrated from the third-party

reports). Thus, this cannot serve as a basis in which to reject Plaintiff's wife's statements.

In response, the Commissioner asserts that Plaintiff does not reference anything in his wife's statement that warranted greater weight or inclusion in the ALJ's RFC. However, this is not the basis for which the ALJ rejected her statements. The ALJ rejected Plaintiff's wife's statement, claiming that she was "not a medical professional and cannot be considered a disinterested third party." (Tr. 20.) Thus, the Commissioner's post-hoc argument is not proper. Neither is it supported. Plaintiff's wife's statements provide critical evidence related to Plaintiff's limitations of daily activities. This is important because the ALJ used alleged functioning of these same daily activities to deny his claim. Thus, remand is warranted on this issue.

Next, Plaintiff argues that the ALJ's Step Five decision is not supported by substantial evidence. Plaintiff contends that In light of the ALJ's failure to properly consider all the evidence, there is no assurance that Plaintiff can perform the jobs identified by the VE. Generally, ALJs must provide a complete picture of a claimant's functional capacity to a VE so there is assurance that expert testimony regarding available jobs took into account all the relevant functional limitations. In *Vargas v. Colvin,* 794 F.3d 809, 813 (7th Cir. 2015), the Seventh Circuit noted that "in this circuit, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *See also Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). Here, as discussed above, in light of the ALJ's selective review of the evidence most favorable to the Plaintiff, the VE was not provided with all the relevant functional limitations.

It is the Agency's burden to show that there is other work in significant numbers that the individual can perform (Step Five). *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137,

140-42 (1987); *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Here, the ALJ failed to meet this burden in light of all the errors addressed above, which were

incorporated into the flawed conclusion at Step Five. Consequently, remand is necessary for the

ALJ to properly evaluate the evidence, reassess the RFC, and present it to a VE, who can take

into account all of the relevant functional limitations.

<u>Conclusion</u>

On the basis of the foregoing, the decision of the ALJ is hereby REMANDED for further

proceedings consistent with this Order.


 Entered: January 6, 2020.


s/ William C.  Lee___
William C. Lee, Judge
United States District Court